United States District Court
Southern District of Texas
**ENTERED**
March 07, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANDREW JOSEPH STUBBS, | § | |
| | § | |
| Petitioner, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 2:18-CV-00289 |
| | § | |
| LORIE DAVIS, *et al.*, | § | |
| | § | |
| Respondents. | § | |

## AMENDED MEMORANDUM AND RECOMMENDATION

Petitioner, Andrew Stubbs (#2070553), is a state prisoner incarcerated at the McConnell Unit in Beeville, Texas. (D.E. 1). Proceeding *pro se*, Petitioner filed this petition pursuant to 28 U.S.C. § 2254 on August 7, 2018,[1] challenging his 2016 Nueces County conviction for three counts of sexual assault of a child. (D.E. 1 and D.E. 16-31, Pages 106-107). This case has been referred to the undersigned for case management pursuant to 28 U.S.C. § 636.

On December 7, 2018, Respondent filed a Motion for Summary Judgment. (D.E. 20). Petitioner filed a response on December 28, 2018. (D.E. 23). On July 23, 2019, the undersigned entered a Memorandum and Recommendation ("M &R") recommending

---

[1]The petition was signed on August 7, 2018 and received by the Court on September 17, 2018. *Spotville v. Cain*, 149 F.3d 374, 376 (5th Cir. 1998) (A *pro se* prisoner's "habeas corpus petition should be deemed filed when the petition is handed over to prison authorities for mailing.").

Respondent's Motion for Summary Judgment be granted, Petitioner's action for habeas corpus relief be dismissed and a certificate of appealability be denied. (D.E. 26). On March 13, 2020, Senior United States District Judge Hilda G. Tagle appointed Petitioner counsel, ordering Petitioner's attorney "to submit an amended response to Respondent's Motion for Summary Judgment or any other relevant filings." (D.E. 38). Petitioner's counsel was then given several extensions and filed the Amended Response pending before the Court on May 18, 2021. (D.E. 55). On December 28, 2021, this case was reassigned to United States District Judge Drew Tipton. (D.E. 59). Respondent requested and was given additional time to file a Reply, which was filed on February 28, 2022. (D.E. 65).

For the reasons stated below, the undersigned **RECOMMENDS** Respondent's Motion for Summary Judgment be **GRANTED**, Petitioner's case be **DISMISSED** and a Certificate of Appealability be **DENIED**. (D.E. 20).

## I.     JURISDICTION

The Court has jurisdiction over the subject matter and the parties pursuant to 28 U.S.C. §§ 2241 and 2254. A habeas action may be filed either in the district where petitioner is in custody or in the district in which petitioner was convicted. 28 U.S.C. § 2241(d); *Wadsworth v. Johnson*, 235 F.3d 959, 961 (5th Cir. 2000). Jurisdiction and venue are proper in this Court because Petitioner was convicted in Nueces County, Texas, which is within the Corpus Christi Division of the Southern District of Texas. *Id*.; 28 U.S.C. § 124(b)(6).

## II.     BACKGROUND

## A.    Procedural Background

On April 7, 2016, Petitioner pleaded guilty to three counts of sexual assault of a child and received a sentence of ten years deferred adjudication.  (D.E. 16-10[2] and D.E. 16-31, Pages 98-105).  As part of his plea, Petitioner was required not to contact the victim or her immediate family members by phone, in person, electronically or by social media and to stay at least 200 yards away from them.  (D.E. 16-10, Pages 7-9 and D.E. 16-31, Pages 98 and 100).  On April 19, 2016, less than two weeks later, the state filed an amended motion to revoke Petitioner's probation and proceed to adjudicate his guilt following probation violations which included possession of a firearm and being in the victim's driveway on April 13, 2016, less than a week after his guilty plea.  (D.E. 16-6, Pages 1-4; D.E. 16-31, Pages 108-111).[3]  Petitioner was appointed new counsel.  (D.E. 16-19, Page 3).   On May 6, 2016, Petitioner received three concurrent sentences of 18 years incarceration.  (D.E. 16-31, Page 106-107).  Petitioner filed a Motion for a New Trial regarding the plea proceedings which was denied on June 21, 2016.  (D.E. 16-13 and D.E. 16-31, Pages 117-126).  Petitioner then filed an appeal which was denied by the Court of

---

[2]Prior to pleading guilty, Petitioner was asked if his attorney had gone over the pending charge in the indictment with him and he stated "Yes, sir.  At this point I just want my life back." (D.E. 16-10, Page 5).  Petitioner was then asked if he was satisfied with his attorney's advice to which he responded "Yes, sir."  (D.E. 16-10, Page 5).  Petitioner was then advised that if accepted the plea bargain, he would not have any right to appeal.  (D.E. 16-10, Pages 5-6).  Petitioner then pleaded guilty, stating it was done freely and voluntarily.  (D.E. 16-10, Pages 5-6).  Petitioner was also advised that he would have "a duty to report and that would last for as long as the rest of your life" and Petitioner stated he understood.  (D.E. 16-10, Page 7).
[3]The Amended Adult Probation Report attached to the Amended Motion to Revoke states Petitioner was seen at the victim's residence in the driveway by a CPS worker.  (D.E. 16-31, Page 110).

Appeals for the Thirteenth District of Texas on November 9, 2017.   (D.E. 16-19).
Petitioner filed a petition for discretionary review ("PDR") on November 30, 2017 with
the Texas Court of Criminal Appeals ("CCA").  (D.E. 16-26).  On January 31, 2018, this
petition was refused.  (D.E. 16-21).

On or about March 28, 2018, Petitioner filed an application for state habeas relief
which was denied by the CCA without written order on findings of the trial court without
hearing on June 27, 2018.  (D.E. 16-29 and D.E. 16-31, Pages 16, 142-44).[4]  Petitioner then
filed the pending application for federal habeas relief on August 7, 2018.  (D.E. 1, Page
10).

## B.    Factual Background[5]

Petitioner was indicted on three charges of sexual assault of a child after his
girlfriend's fourteen-year-old daughter, referred to as "L.R.," reported Petitioner assaulted
her in their home in October 2015.   (D.E. 16-3, Pages 12-16).   L.R. gave consistent
statements during several interviews stating Petitioner penetrated her vagina digitally,
orally and with his penis.  (D.E. 16-4, Pages 2-5).  During the investigation, investigators
took swab samples from the victim, Petitioner and from the location of the alleged assault
for forensic testing.  (D.E. 16-2, Pages 18-20 and D.E. 16-4, Page 46).

---

[4]Petitioner first filed for state habeas relief on or about September 20, 2016, but the application
was denied on April 12, 2017 because his conviction was not yet final at the time the application
was filed.  (D.E. 16-27 and D.E. 16-28, Page 19).

[5]The complete factual background of this case and the relevant testimony is summarized in the
Court of Appeals for the Thirteenth District of Texas' November 9, 2017 opinion.  (D.E. 16-19).

On January 26, 2016, L.R. submitted a written recantation in the form of a victim impact statement (the "written recantation") claiming she made up the accusation to "get rid of" Petitioner due to his command of her mother's attention and stating "I love him.  He is like a dad to me."  (D.E. 16-4, Pages 50-52).  On March 21, 2016, the written recantation and pending DNA results were discussed in open court in Petitioner's presence during a hearing on Petitioner's Motion to Reduce Bond.  (D.E. 16-9, Pages 8-10).  Petitioner's niece, Trisha Caley, also videotaped L.R. giving a second recantation (the "video recantation").[6]  (D.E. 16-13, Pages 67-72).  Caley or another member of Petitioner's family gave a copy of the video to Petitioner's trial counsel, Randall Pretzer, and Caley informed Petitioner at least of its existence and generally of its contents.  (D.E. 16-14, Page 10 and

---

[6]The record is unclear regarding the date of the recanting video but it is clear the video was filmed before Petitioner entered his guilty plea.  (D.E. 16-13, Page 55-56).

D.E. 16-31, Page 124).[7]  Despite knowing about the videotape, Petitioner did not ask to view it before entering his guilty plea.  (D.E. 16-13, Pages 55-56).[8]

Before the forensic testing results were returned, Petitioner's counsel negotiated a plea agreement with the prosecution, and Petitioner entered a guilty plea on April 7, 2016. (D.E. 16-15, Pages 158-161 and D.E. 16-31, Pages 98-99).  Petitioner indicated at his plea hearing he was entering his plea freely and voluntarily, he was aware of the range of possible punishment if his guilt were later adjudicated, and he was satisfied with his counsel's representation.  (D.E. 16-10, Pages 4-6).  Petitioner signed similar written statements which acknowledged his possible range of punishment and probation conditions.  (D.E. 16-2, Pages 80-84 and D.E. 16-3, Pages 1-7).  Petitioner also signed a Judicial Confession and Stipulation and Certification of Discovery, confessing to all three counts, stating he was pleading guilty because he was guilty, and also stating his "attorney

---

[7]In an affidavit dated May 9, 2016, Petitioner stated "I was not made aware that [L.R.] recanted until a hearing asking my bond be modified, but I was still not allowed to read the statement.  I was later contacted by [Caley] who told me that [L.R.] had recanted and [Caley] captured it on video."  (D.E. 16-31, Pages 124-25).

[8]At the hearing on Petitioner's Motion for a New Trial, the prosecutor asked Petitioner, "Sir, during those five visits, during any one of those five visits, did you ask Mr. Pretzer to show you the video?"  (D.E. 16-13, Page 55).  Petitioner responded, "No, he was told about it and I was trying to get him to get a copy of it because he wouldn't answer nobody's phone calls. He wouldn't talk to nobody."  (D.E. 16-13, Page 55).  The prosecutor again asked, "Did you ever ask him to show it to you?" to which Petitioner responded, "No, I did not."  (D.E. 16-13, Page 56).  Petitioner was then asked, "When you had a copy right there in the courtroom at your plea hearing, and you knew he had it, did you ask him to show it to you?" to which Petitioner responded, "I asked him about it and he said it was irrelevant because he was already working on a plea bargain."  (D.E. 16-13, Page 56).  The prosecutor then asked, "Did you ask to see it?" to which Petitioner responded, "No, ma'am I did not.  I wanted the Court to see it, as to what he told me, it was irrelevant."  (D.E. 16-13, Page 56).

has investigated the facts and circumstances surrounding my case, discussed those with me, and advised me of the possible defenses.  I am satisfied with my attorney's representation."  (D.E. 16-3, Pages 10-11).

Three evidentiary documents central to Petitioner's claims were found by Petitioner or created after the entry of Petitioner's guilty plea: (1) a May 2, 2016 Department of Public Safety forensic report (the "forensic biology report") stating semen was not detected in the swab samples collected by law enforcement; (2) a June 1, 2016 Department of Public Safety DNA laboratory report (the "DNA report") excluding Petitioner as a donor of DNA from the swab samples; and (3) an October 22, 2015 Facebook post made by the victim's mother.[9]  (D.E. 16-15, Page 158-61).  However, each of these items was available to Petitioner prior to the hearing on his Motion for a New Trial and during his subsequent appeal.  (D.E. 16-13; D.E. 16-15, Page 169 and D.E. 16-31, Pages 117-126).

## III.   ANTITERRORISM AND EFFECTIVE DEATH PENALTY ACT OF 1996 ("AEDPA")  28 U.S.C. § 2254

Federal habeas relief is available to a state prisoner only if he is being held in violation of the Constitution, laws, or treaties of the United States.  *Boyd v. Scott*, 45 F.3d 876, 881 (5th Cir. 1994) (per curiam) (citation omitted).  Under AEDPA, a state prisoner may not obtain relief with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

---

[9]Dated one day after Petitioner's arrest, the Facebook post read: "Yay I'm single thank god but hell it's worth it I don't give a dam [sic]."  (D.E. 16-15, Page 140 and D.E. 16-19, Page 4).

(a) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(b) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d).

Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies the principle to the facts of the prisoner's case.  *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000).  Although "unreasonable" is difficult to define, the Court noted it is an objective, rather than subjective, standard and emphasized that there is a critical difference between an unreasonable application of federal law and a merely "incorrect" or "erroneous" application of federal law.  *Neal v. Puckett*, 239 F.3d 683, 687 (5th Cir. 2001) (citing *Williams*, 529 U.S. at 410-11).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).  A federal habeas court must determine what theories or arguments supported, or could have supported, that state court's decision.  Then it must

ask whether it is possible that fairminded jurists could disagree that the arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *Richter*, 562 U.S. at 102. Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

The standard is very difficult to meet. "As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings…It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents. It goes no further." *Id.* "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. In addition, if a decision by a state court is silent as to the reasons for the refusal, a federal habeas court can "look through" the decision and evaluate the last reasoned state court decision. *Bledsue v. Johnson*, 188 F.3d 250, 256 (5th Cir. 1999).

A state court's factual findings are presumed to be correct and a petitioner has the burden of rebutting the presumption with clear and convincing evidence. *Garcia v. Quarterman*, 454 F.3d 441, 444 (5th Cir. 2006). "This deference extends not only to express findings of fact, but to the implicit findings of the state court." *Id.* In addition, "[w]here a state court's decision is unaccompanied by an explanation, the habeas

petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98.

## IV.   SUMMARY JUDGMENT

In deciding a motion for summary judgment, the district court must determine whether the pleadings, discovery materials, and the summary judgment evidence show there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact.  *Hamilton v. Segue Software, Inc.*, 232 F.3d 473, 477 (5th Cir. 2000).

Rule 56 of the Federal Rules of Civil Procedure generally applies to federal habeas corpus cases.  *Clark v. Johnson*, 202 F.3d 760, 764-65 (5th Cir. 2000) (citations omitted); *see also* Fed. R. Civ. P. 81(a)(4) ("These rules apply to proceedings for habeas corpus…"). While summary judgment rules apply with equal force in a § 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings.  Fed. R. Civ. P. 81(a)(4)(A).  Therefore,  § 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant. Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, such findings must be accepted as

correct by the federal habeas court.  *See Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

## V.   DISCUSSION

Petitioner raises the following four grounds for relief: (1) ineffective assistance of counsel; (2) sufficiency of evidence; (3) prosecutorial misconduct; and (4) actual innocence.  (D.E. 1, Pages 6-7).  For the reasons discussed below, the undersigned recommends Petitioner's arguments are without merit.

### A.   Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel during the plea agreement process.  To prevail on an ineffective assistance of counsel claim challenging the voluntariness of a guilty plea, a petitioner must meet the two-prong test set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Hill v. Lockhart*, 474 U.S. 52 (1985) (extending the *Strickland* standard's application to plea agreements).  Petitioner must show counsel's performance fell below an objective standard of reasonableness and that deficient performance prejudiced the defense.  To be cognizable under *Strickland*, trial counsel's error must be "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Strickland*, 466 U.S. at 687-88.  Petitioner must prove he was prejudiced by his attorney's substandard performance by showing there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  "The likelihood of a different result must be substantial, not just conceivable."  *Richter*,

11 / 32

562 U.S. at 112 (citations omitted).   In this case, Petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have instead insisted on going to trial.  *Hill*, 474 U.S. at 58-59.

Judicial scrutiny of counsel's performance must be highly deferential and a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.  A court must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.  A petitioner "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690.  The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance while recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*  It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.* at 689.  The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms." *Id.* at 690.

In addition, federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  Where the state court adjudicated an ineffective assistance claim on the merits, this Court must review petitioner's claim under both *Strickland* and § 2254(d).  When § 2254(d) applies, the

question is not whether counsel's actions fell below *Strickland*'s standard – it is "whether the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S. at 101.

Petitioner claims his trial counsel was ineffective because he (1) failed to fully explain the meaning of deferred adjudication, (2) failed to fully explain the details of Petitioner's plea agreement, (3) failed to explain the potential value of pending DNA evidence, (4) did not allow Petitioner to review the victim's recantations, (5) did not adequately confer with Petitioner or independently investigate the case, (6) did not adequately investigate the Facebook post written by the victim's mother, (7) failed to investigate possible witnesses L.F. and L.F.'s boyfriend, and (8) failed to properly inform Petitioner about registering as a sex offender for life. (D.E. 1 and D.E. 55). Upon review, the undersigned recommends Petitioner fails to show the state court's application of the *Strickland* standard was unreasonable. The undersigned further recommends Petitioner's last two grounds for relief are both time barred and his final ground is also unexhausted and procedurally barred for the reasons stated below.

Petitioner first alleges his counsel was ineffective because he did not explain the plea bargain or the meaning of deferred adjudication. (D.E. 1, Page 15 and D.E. 55, Pages 59-62). At the hearing on Petitioner's Motion for a New Trial, Petitioner testified counsel never explained his probation conditions or the meaning of deferred adjudication. (D.E. 16-13, Page 47-48). Petitioner estimated counsel reviewed "maybe a quarter" of the written admonishments with him before counsel simply told him where to sign. (D.E. 16-

13, Page 49). However, Petitioner's counsel testified he communicated the plea offer to Petitioner two or three weeks before the plea and explained the essential details of the plea agreement, including the probation conditions, in detail. (D.E. 16-14, Pages 9, 14-15). Counsel further testified he explained to Petitioner that under deferred adjudication he could still later receive up to the maximum sentence. (D.E. 16-14, Page 25). In short, Petitioner's and counsel's testimony differed greatly regarding the depth of counsel's explanation of the plea. In evaluating Petitioner's direct appeal, the state appellate court noted "many if not most of the [alleged] deficiencies," including the explanation of the plea, "[could] be addressed as reasonable credibility determinations that the trial court made in favor of the State." (D.E. 16-19, Page 15) ("For instance, the trial court could have reasonably believed Counsel's testimony that he thoroughly discussed the case-including the evidence, community supervision, and the nature of the please-instead of Stubbs's report that Counsel explained these aspects only minimally or not at all.") Likewise, the state habeas court could have reasonably believed counsel's testimony that he thoroughly discussed the case with Petitioner more than Petitioner's opposite claim that counsel hardly explained any aspects of the case or plea agreement. Therefore, it was not unreasonable for the state habeas court to determine counsel's explanation to Petitioner of deferred adjudication and the plea agreement was within the wide range of effective professional assistance.[10] Further, even if the Court were to find counsel's explanation

---

[10]As noted by Respondent in the reply, Petitioner asks this Court to reweigh the credibility determinations made by the state court, namely that trial counsel's testimony was more credible than Petitioner's testimony. (D.E. 55, Pages 41-48). However, "[t]he habeas corpus statute obliges

deficient, Petitioner has not shown prejudice. Petitioner has not alleged failures of counsel's plea explanation showing a reasonable probability that he would have declined the offer and proceeded to trial had the plea been explained differently. The court informed Petitioner of the maximum penalty during his guilty plea proceedings and Petitioner signed written admonishments explaining deferred adjudication procedures in detail. (D.E. 16-2, Page 81; D.E. 16-3, Pages 3-5 and D.E. 16-10, Page 5). The undersigned recommends the state court's application of the *Strickland* standard was not unreasonable with respect to the explanation of Petitioner's plea.

Petitioner also contends his trial counsel was ineffective because he advised the pending DNA evidence would be harmful no matter the results. (D.E. 1, Page 6 and D.E. 55, Pages 55-59). While the state court correctly recognized potential flaws in such advice, it ultimately determined counsel may have simply "unartfully" explained that any DNA results are subject to counterarguments from the prosecution with "even the most favorable DNA evidence." (D.E. 16-19, Page 17). Further, Petitioner's counsel testified he sought the plea agreement at Petitioner's insistence despite counsel urging Petitioner to wait. (D.E. 16-14, Pages 22-24 and 35). Therefore, it was not an unreasonable determination that counsel adequately advised Petitioner on the pending DNA evidence.

---

federal judges to respect credibility determinations made by the trier of fact. *Pemberton v. Collins*, 991 F.2d 1218, 1225 (5th Cir. 1993) ("The trial judge must have believed the version of the story told by the state's witnesses, as evidenced by finding that the confession was voluntary.") (citations omitted); *Schillereff v. Davis*, 766 F. App'x 146, 152 (5th Cir. 2019) ("We will not substitute our own credibility determination herein for that of the state courts.") (citations omitted); (D.E. 65, Pages 7-8).

Petitioner has likewise not demonstrated that counsel's treatment of the recantation evidence was ineffective assistance. While it is undisputed Petitioner did not view the videotape, counsel testified he discussed the recantation evidence with Petitioner at length. (D.E. 16-14, Pages 21 and 37). Petitioner admitted he was aware of both recantations at the time of his plea. (D.E. 16-13, Pages 53-54 and D.E. 16-31, Pages 124-25). Still, Petitioner did not ask counsel to show him the video. Petitioner pleaded guilty despite being aware of both recantations and being generally aware of their contents and therefore, Petitioner has failed to show he likely would not have pleaded guilty but for counsel's treatment of the recantation evidence.

Petitioner next claims counsel's failure to confer with him and investigate the case, specifically his failure to discover the victim's mother's Facebook post, renders counsel's performance ineffective. (D.E. 1, Pages 15-16 and D.E. 55, Pages 53-55). Like the testimony concerning counsel's explanation of the plea agreement, Petitioner's and counsel's testimony contrasted sharply regarding the depth of their meetings.[11] Again, the state court could have reasonably found counsel's testimony more credible and determined counsel's visits and discussions with Petitioner were adequate. Regarding the investigation of the case, counsel testified he was unaware of the Facebook post. (D.E. 16-14, Page 12).

---

[11]Counsel testified he met with Petitioner four to five times, between 30 and 60 minutes each time during the five months Petitioner was incarcerated. (D.E. 16-14, Page 5). He further testified he and Petitioner discussed the DNA evidence and recantations extensively. (D.E. 16-14, Pages 21-22). In contrast, Petitioner testified their approximately five meetings routinely lasted only five minutes and counsel never showed him the discovery packet containing the written recantation, investigation reports and medical records. (D.E. 16-13, Pages 41, 46 and D.E. 16-15, Pages 3-126).

While the post may have been useful as impeachment evidence as to the victim's mother, it is unclear how counsel's failure to discover it impacted Petitioner's plea decision—the post is vague and does little to contradict the evidence central to the state's case at the time of Petitioner's plea, such as the victim's initial statements and medical records. Petitioner has not shown a reasonable probability that, but for his counsel's failure to discover the Facebook post, he would not have pleaded guilty. *Hill*, 474 U.S. at 58-59.

In sum, Petitioner fails to show the state court's application of the *Strickland* standard was unreasonable as to his first six ineffective assistance of counsel claims. The record shows the court reasonably found counsel's performance to be within the wide range of effective assistance. Further, the state court could have reasonably determined Petitioner failed to show a substantial probability that, but for counsel's alleged errors, he would have rejected a favorable plea agreement and proceeded to an uncertain trial.

In his response, Petitioner's counsel raises two additional ineffective assistance of counsel grounds for relief Petitioner did not raise in his Petition. Specifically, Petitioner now alleges his counsel failed to investigate possible witnesses L.F. and L.F.'s boyfriend and failed to properly inform Petitioner about registering as a sex offender for life. (D.E. 1 and D.E. 55, Pages 12, 53 and 59-61) (L.F. was the victim's best friend). As detailed by Respondent in the Reply, these new grounds for relief are time barred as they were not raised until well after the expiration of the one-year limitations period and do not relate back to his original petition. 28 U.S.C. § 2244(d)(1) (AEDPA one year limitations period); Fed. R. Civ. P. 15; *Austin v. Davis*, No. H-15-3424, 2016 WL 3620791, at *3 (S.D. Tex.

June 28, 2016) (Finding grounds raised in the amended habeas petition did not relate back to those in the original petition and were therefore, untimely).  While Petitioner raised ineffective assistance of counsel claims in his original petition including failure to investigate and failure to fully explain the plea agreement, he did not raise these two new claims as Petitioner does not refer to L.F. or her boyfriend or about registering as a sex offender.  (D.E. 1).  Further, the failure to investigate claim as it relates to L.F. and her boyfriend is also unexhausted and procedurally barred as it was not raised in either Petitioner's PDR or in his state habeas application as required.  (D.E. 16-26 and D.E. 16-31, Pages 7-37).  Petitioner did specifically raise his second new ground for relief in his PDR.  (D.E. 16-26, Page 20); 28 U.S.C. § 2254(b) (A petitioner must fully exhaust state remedies before seeking federal habeas relief);  *Sterling v. Scott*, 57 F.3d 451, 453 (5th Cir. 1995) (Petitioner must fairly present the factual and legal basis of any claim to the highest available state court for review prior to raising it in federal court); *Deters v. Collins*, 985 F.2d 789, 795 (5th Cir. 1993) (Same).  In Texas, all claims must be presented, either in a PDR or a state application for writ of habeas corpus, to the Texas Court of Criminal Appeals.  *Richardson v. Procunier*, 762 F.2d 429, 431-32 (5th Cir. 1985).  The Fifth Circuit has explained that in order for a claim to be exhausted, "the state court system must have been presented with the same facts and legal theory upon which the petitioner bases his current assertions."  *Ruiz v. Quarterman*, 460 F.3d 638, 642-43 (5th Cir. 2006) (citing *Picard v. Connor*, 404 U.S. 270, 275-77 (1971)).  A federal habeas corpus petitioner also fails to exhaust his state remedies when he relies on a different legal theory than presented

in state court, or when he makes the same legal claim in federal court but supports the claim with factual allegations he did not present to the state courts. *Dispensa v. Lynaugh*, 847 F.2d 211, 217-18 (5th Cir. 1988); *Nobles v. Johnson*, 127 F.3d 409, 423 (5th Cir. 1997) (Petitioner's failure to raise his claims in his initial state habeas petition without cause means the Texas abuse-of-writ doctrine would bar a successive state habeas petition, meaning federal habeas review is precluded); *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995) (The Texas abuse of writ statute restricting successive habeas applications is regularly and strictly applied, constituting an independent and adequate procedural rule that bars federal review). Petitioner has not presented any argument as to why these claims are not time barred and why his failure to investigate claim as to L.F. and her boyfriend is not unexhausted and procedurally barred. *Coleman*, 501 U.S. at 750 (Procedural default excused if prisoner can demonstrate cause and actual prejudice or a fundamental miscarriage of justice). Consequently, the undersigned recommends Petitioner's two newly added grounds for relief be dismissed.

Further, even if these claims were not time barred and/or unexhausted and procedurally barred, as recommended above, Petitioner's counsel testified he communicated the plea offer to Petitioner, specifically that Petitioner would have to register as a sex offender and there would be certain areas he would not be able to go

19 / 32

because of his sex offender status.  (D.E. 16-14, Pages 15 and 24).[12]   Again, as noted
previously, Petitioner's and counsel's testimony differed greatly regarding the depth of
counsel's explanation of the plea and a credibility determination was made both on direct
appeal and by the state habeas court.  *Schillereff*, 766 F. App'x at 152.  Further, Petitioner
again fails to demonstrate with reasonable probability that he would have declined the offer
and proceeded to trial if he had to register as a sex offender for life.  Petitioner signed
written admonishments explaining sex offender registration procedures in detail, including
that he could be required to report for life.  (D.E. 16-2, Page 81 and D.E. 16-3, Pages 3-5).
The undersigned again recommends the state court's application of the *Strickland* standard
was not unreasonable with respect to the explanation of Petitioner's plea.

Further, as to Petitioner's trial counsel's alleged ineffective assistance related to L.F.
and L.F.'s boyfriend, the Fifth Circuit has repeatedly held that complaints of uncalled
witnesses are not favored in federal habeas review because the presentation of testimonial
evidence is a matter of trial strategy and because allegations of what a witness would have
stated are largely speculative.  *Day v. Quarterman*, 566 F.3d 527 (5th Cir. 2009); *Bray v.
Quarterman*, 265 F. App'x 296, 298 (5th Cir. 2008).  To prevail on an ineffective assistance
of counsel claim based on counsel's failure to call a witness, the petitioner must name the
witness, demonstrate the witness was available to testify and would have done so, set out

---

[12]While Petitioner asserts his trial counsel incorrectly informed him that "he positively would be
able to deregister as a sex offender upon completion of his probation," Petitioner's trial counsel
testified that he never guaranteed Petitioner that the requirement to register as a sex offender for
life would be lifted.  (D.E. 16-14, Pages 24-25 and D.E. 55, Pages 46-47).

of the contents of the witness' proposed testimony and show the testimony would have been favorable to a particular defense.  *Id.* (citing *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir. 1985)).  Petitioner's claim regarding these witnesses therefore fails because he has not shown they would have testified in his defense, what their testimony would have been or that their testimony would have been beneficial to his defense.  *Id*.

### B.    Sufficiency of the Evidence

Petitioner also asserts the evidence is insufficient to support his conviction.  (D.E. 1, Page 7).  Petitioner contends there is a total lack of factual evidence substantiating his guilt which precludes his conviction despite his guilty plea.  (D.E. 1, Page 7 and D.E. 23, Page 3).

Petitioner's claim is without merit because he waived challenges based on sufficiency of the evidence when he pleaded guilty.  Federal courts have extremely limited habeas review of claims based on the sufficiency of the evidence, and the standard for reviewing such claims is usually supplied by *Jackson v. Virginia*, 443 U.S. 307 (1979).[13] However, the Fifth Circuit has held the *Jackson* standard is inapplicable to convictions based on a guilty plea, because "[s]tate courts are under no constitutional duty to establish a factual basis for the guilty plea prior to its acceptance, unless the judge has specific notice

---

[13]In *Jackson*, the Supreme Court held the standard of review when a state prisoner challenges the sufficiency of the evidence in a federal habeas corpus proceeding is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson*, 443 U.S. at 319 (This familiar standard gives full play to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.") (citation omitted).

that such an inquiry is needed." *Smith v. McCotter*, 786 F.2d 697, 702 (5th Cir. 1986)

("We have explicitly stated: 'No federal constitutional issue is raised by the failure of the

Texas state court to require evidence of guilt corroborating a voluntary plea.'") (citation

omitted); *Kelley v. Alabama*, 636 F.2d 1082, 1083 (5th Cir. 1981) (Applying the *Jackson*

standard to guilty plea cases would "permit every person who pleads guilty to seek at a

later date a trial of his case for the first time in the federal court system.")  Petitioner

admitted his guilt during the plea proceedings and did not say or do anything to notify the

judge that an inquiry into the factual basis for the plea was needed.  (D.E. 16-10).[14]

Petitioner waived challenges to the sufficiency of the evidence because the guilty plea itself

provides constitutionally sufficient evidence for his conviction.  *Kelley*, 636 F.2d at 1083-

84; *Baker v. Estelle*, 715 F.2d 1031, 1035-36 (5th Cir. 1983); *Carter v. Quarterman*, No.

C-07-114, 2007 WL 3283654, at *7 (S.D. Tex. Nov. 6, 2007) ("The Fifth Circuit has

specifically refused to allow habeas petitioners who voluntarily pleaded guilty…to

challenge the sufficiency of the evidence.")  Petitioner's guilty plea alone is supporting

evidence and therefore, the undersigned recommends his claim is not cognizable under

federal habeas review.  *Smith*, 786 F.2d at 702-03.

## C.    Prosecutorial Misconduct

In his next ground for relief, Petitioner alleges the prosecutor committed misconduct

by knowingly using false evidence and failing to correct false evidence.  (D.E. 1, Pages 7

---

[14]For example, a defendant entering a guilty plea while asserting his innocence could notify a judge that an inquiry into the factual basis of the guilty plea is necessary. *Banks v. McGougan*, 717 F.2d 186, 188 (5th Cir. 1983).

and 19-21).  Specifically, Petitioner contends the state's evidence indicating the presence of sperm in samples taken from the victim was knowingly false because these samples were later found not to have the presence of sperm.  Petitioner further alleges that, during his appeal, the state knowingly failed to correct false evidence by emphasizing the June 1, 2016 DNA report indicating Petitioner's DNA was not found in the swab samples taken from the victim instead of the May 2, 2016 forensic biology report indicating no sperm was present on the samples at all.  (D.E. 1, Pages 19-20).  However, as the state habeas court determined, Petitioner forfeited his prosecutorial misconduct claims when he failed to object at trial or raise them on direct appeal.  (D.E. 16-31, Page 143).

A federal habeas court will generally not consider a claim that the state court rejected on the basis of an adequate and independent state procedural ground.  *Coleman v. Thompson*, 501 U.S. 722, 729-32 (1991) (citations omitted); *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999) ("[I]t is well settled that federal review of a claim is procedurally barred if the last state court to consider the claim expressly and unambiguously based its denial of relief on a state procedural default.") (citations omitted).  To produce a federal cognizable default, the state procedural rule "must have been 'firmly established and regularly followed by state practice' to prevent subsequent review" by federal courts.  *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991) (citations omitted); *Stokes v. Anderson*, 123 F.3d 858, 860 (5th Cir. 1997) (same).  It is well established under Texas law that claims of prosecutorial misconduct are forfeited if they are not raised on direct appeal.  *Ex parte Webb*, 270 S.W.3d 108, 110-12 (Tex. Crim. App. 2008); *Ex parte Townsend*, 137 S.W.3d

79, 81 (Tex. Crim. App. 2004).  The state habeas court's discussion of the merits in the alternative with respect to Petitioner's claim of prosecutorial misconduct does not negate the procedural bar.  *Hughes v. Dretke*, 412 F.3d 582, 592 (5th Cir. 2005) ("The rule in this circuit is that, when a state court bases its decision upon the alternative grounds of procedural default and a rejection of the merits, a federal court must, in the absence of good 'cause' and 'prejudice,' deny habeas relief because of the procedural default.") (citation omitted); *Amos v. Scott*, 61 F.3d 333, 341-42 (5th Cir. 1995) ("Only if the TCCA should clearly and unequivocally excuse the procedural default" will a subsequent discussion of the merits be considered a decision on the merits only.).

A procedural default may be excused if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.  To establish a fundamental miscarriage of justice, a petitioner must demonstrate he is actually innocent of the offense.  *Fairman v. Anderson*, 188 F.3d 635, 644 (5th Cir. 1999) (Petitioner must show, "as a factual matter, that he did not commit the crime of conviction" and "must support his allegations with new, reliable evidence that was not presented at trial and must show that it was 'more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'") (citations omitted); *Konemany v. Stephens*, No. H-13-2309, 2013 WL 6858506, at *3 (S.D. Tex. Dec. 30, 2013) ("By 'fundamental miscarriage of justice' [it] is meant that he was actually innocent of the crime.") (citations omitted).

In this case, the undersigned recommends the procedural default cannot be excused because Petitioner failed to raise a prosecutorial misconduct claim on appeal and has not shown cause or actual innocence.  Petitioner fails to argue, much less demonstrate, cause for his procedural default or establish actual prejudice or a fundamental miscarriage of justice.  Additionally, contrary to his assertions in his most recent response, Petitioner has not presented new evidence.  All evidence cited to support Petitioner's prosecutorial misconduct claim or actual innocence—the forensic reports, Facebook post, and video recantation—was available before the hearing on Petitioner's Motion for a New Trial.  Additionally, as stated by the state court on habeas review, "the evidence does not affirmatively show [Petitioner's] innocence" and has already been considered twice:  in a motion for a new trial and on appeal.  (D.E. 16-31, Page 142).  The undersigned recommends Petitioner's claims of prosecutorial misconduct are procedurally barred.

Alternatively, even if these claims were not procedurally barred, Petitioner's allegations of misconduct are conclusory.  Petitioner has provided no evidence to show the state knowingly relied on false reports regarding the presence of sperm during his plea agreement when the contradictory analysis was not available until a month later.  The non-movant's burden at summary judgment is not satisfied by showing "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995) (Parties must submit evidence of contradictory facts and "all justifiable inferences are to be drawn" in the non-movant's favor) (citations omitted).  Therefore, the

25 / 32

undersigned recommends Petitioner's claims of prosecutorial misconduct fail to defeat summary judgment.

### D.    Actual Innocence

Lastly, Petitioner asserts actual innocence as an independent ground for relief. While actual innocence sometimes acts as a gateway exception to procedural bars, the Supreme Court has expressly held that it is not a ground for federal habeas relief without a constitutional violation. *Herrera v. Collins*, 506 U.S. 390, 399 (1993) ("Once a defendant has been afforded a fair trial and convicted of the offense for which he is charged, the presumption of innocence disappears.") (citation omitted).  The undersigned recommends Petitioner's asserted constitutional violations—ineffective assistance of counsel, insufficient evidence, and prosecutorial misconduct—are without merit. *Id.*  ("Claims of actual innocence based on newly discovery evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding.")  Therefore, there is not a constitutional violation warranting consideration of an actual innocence claim.  Further, Petitioner acknowledged his guilt by entering his guilty plea, was admonished of the consequences in open court and signed a judicial confession and stipulation to the evidence.  (D.E. 16-10 and D.E. 16-15, Pages 3-4).  As discussed above, Petitioner has also not produced any new evidence or met the demanding actual innocence standard. *McQuiggins v. Perkins*, 569 U.S. 383, 386 (2013) (The Supreme Court has made it clear that "tenable actual-innocence gateway pleas are rare" and "a petitioner does not meet the threshold requirement unless he persuades the

district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.") (citation omitted).  Petitioner fails to cite to any evidence showing he satisfies the demanding actual innocence standard and does not provide any sufficient newly discovered evidence in support of his claim.  The evidence cited was already twice considered on direct appeal and in the state habeas proceeding. *Summers v. Dretke,* 431 F.3d 861, 872 (5th Cir. 2005) (Even when petitioners who assert claims of recanting witnesses provide affidavits from those witnesses, the affidavits are viewed with "extreme suspicion" by the Fifth Circuit) (citations omitted); *Hancock v. Davis*, 906 F.3d 387, 390 (5th Cir. 2018) (Evidence is not new under the actual innocence standard as defined by the Fifth Circuit if it "was always within the reach of [petitioner's] personal knowledge or reasonable investigation.") (citation omitted). Further, even if the Court were to consider the evidence as new, Petitioner has failed to demonstrate that in light of this evidence, no juror would have voted to find him guilty. Accordingly, the undersigned recommends Petitioner's actual innocence claim be denied.

## VI.   EVIDENTIARY HEARING

Petitioner requests an evidentiary hearing to present the evidence to a federal court. (D.E. 23, Page 10 and D.E. 55, Pages 62-64).  However, the undersigned recommends Petitioner is barred from obtaining a hearing pursuant to 28 U.S.C. § 2254(e)(2).[15]

---

[15] If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on--

27 / 32

Petitioner's claims do not rely on a new rule of constitutional law made retroactive to cases on collateral review or a newly discovered factual predicate that could not have been previously discovered through the exercise of due diligence. *Id.* Further, he has failed to show any facts that would establish by clear and convincing evidence that no reasonable factfinder would have found him guilty. 28. U.S.C. § 2254(e)(2).

Even assuming his claim is not barred, Petitioner is not entitled to an evidentiary hearing in federal court unless the state did not provide him with a full and fair hearing and, if proven true, his allegations would entitle him to relief. *Murphy v. Johnson*, 205 F.3d 809, 816 (5th Cir. 2000). A "full and fair" hearing in the state courts does not necessarily require live testimony. *Id.*; *Clark v. Johnson*, 202 F.3d 760, 766 (5th Cir. 2000) ("[A] paper hearing is sufficient to afford a petitioner a full and fair hearing on the factual issues underlying the petitioner's claims, especially where, as here, the trial court and the state habeas court were one in the same.") Additionally, a district court does not abuse its discretion in denying an evidentiary hearing if it has sufficient facts to "make an informed decision regarding the merits of a claim." *Murphy*, 205 F.3d at 816. Petitioner asserts the

---

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

state courts' review of his post-conviction claims were inadequate, citing to *Trevino v. Thaler*, 569 U.S. 413 (2013); (D.E. 55, Pages 63-64).  Petitioner asks this Court to hold an evidentiary hearing to permit him to depose the victim, the victim's mother and L.F., asserting their testimony "would assist the Court in considering Mr. Stubbs' claims of actual innocence and IATC for failure to develop this evidence in the trial court."  (D.E. 55, Page 63).  However, Petitioner has given no indication or evidence of what their testimony would be or how it would assist the Court.  Further, Petitioner's claims were all raised before the state court, in his motion for a new trial, on appeal, in his PDR and/or in his state habeas application, including his claims of actual innocence and ineffective assistance of trial counsel, and therefore, these claims were fully adjudicated on the merits.  That Petitioner now wants to raise different arguments because his previous ones were unsuccessful does not mean he was not afforded a full and fair hearing.  *Trottie v. Stephens*, 581 F. App'x 436, 440 n. 1 (5th Cir. 2014) (Petitioner was not entitled to an evidentiary hearing under *Trevino* where he had fully exhausted his claims before the state court).  The record in this case contains sufficient facts to make an informed decision on the merits of the claim and accordingly, the undersigned recommends the Court not exercise its discretion to order an evidentiary hearing in the matter.

## VII.   CERTIFICATE OF APPEALABILITY

An appeal may not be taken to the Court of Appeals from a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability."  28 U.S.C. § 2253(c)(1)(A).  Although Petitioner has not yet filed a notice of appeal, it is

respectfully recommended that this Court nonetheless address whether he would be entitled to a certificate of appealability ("COA").  A District Court ruling on a petitioner's relief may *sua sponte* rule on a COA because it "is in the best position to determine whether the petitioner has made a substantial showing of a denial of a constitutional right on the issues before that court.  Further briefing and argument on the very issues the court has just ruled on would be repetitious."  *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000) (per curiam).

A COA "may issue...only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  "The COA determination under § 2253(c) requires an overview of the claims in the habeas petition and a general assessment of their merits."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003).  As to claims the Court rejects solely on their merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  As to claims the Court rejects solely on procedural grounds, the Petitioner must show both that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right <u>and</u> that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.* (emphasis added).

In Petitioner's case, reasonable jurists could not debate the dismissal or denial of the Petitioner's §2254 petition on substantive or procedural grounds, nor find that the issues are adequate to deserve encouragement to proceed.  *Miller-El*, 537 U.S. at 327.

Accordingly, it is respectfully recommended the Court not issue a certificate of appealability.

## VIII.   RECOMMENDATION

Based on the foregoing, it is respectfully recommended that Respondent's Motion for Summary Judgment be **GRANTED** (D.E. 20) and Petitioner's application for habeas corpus relief be **DISMISSED**.   It is further recommended that a Certificate of Appealability be **DENIED**.

Respectfully submitted on March 7, 2022.

Jason B. Libby
United States Magistrate Judge

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(c); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a Magistrate Judge's report and recommendation within **FOURTEEN (14) DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).